IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLSTATE NEW JERSEY INSURANCE CO., et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 13-5809 (JBS/KMW) |
| v. | |
| SUMMIT PHARMACY, INC., et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Douglas M. Alba, Esq.
Pringle Quinn & Anzano
9000 Midlantic Drive
Suite 110
Mt. Laurel, NJ 08054
    -and-
Edward R. Bonanno, Esq.
Pringle Quinn Anzano
701 Seventh Avenue
Belmar, NJ 07719
    Attorneys for Plaintiffs

Jonathan E. Levitt, Esq.
William Lim, Esq.
Frier & Levitt LLC
84 Bloomfield Avenue
Pine Brook, NJ 07058
    Attorneys for the Summit Defendants

Frank Brennan, Esq.
Thomas F. Flynn, III, Esq.
Flynn & Associates, P.C.
2091 Springdale Road, Suite 2
Cherry Hill, NJ 08003
    Attorneys for the SJHW Defendants

Christopher J. Stanchina, Esq.
222 New Road
Suite 206
Linwood, NJ 08221
     Attorney for ASAP Defendants

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

Six Plaintiff insurance companies sued 54 named Defendants, identified <u>infra</u>, in the Superior Court of New Jersey, asserting claims under the federal Racketeering Influenced and Corrupt Organization Act ("RICO"), the New Jersey RICO statute, the New Jersey Insurance Fraud Prevention Act ("NJIFPA"), and the New Jersey Codey Act. Defendants removed this case to this Court based on federal question jurisdiction. Plaintiffs allege that Defendants provided unlawful prescription services and seek over $2.2 million in damages, declaratory judgment, and disgorgement.

This matter comes before the Court on six motions: Plaintiffs' motion for preliminary injunction to stay personal injury protection arbitrations [Docket Item 17]; three motions to dismiss from three groups of Defendants [Docket Items 21, 22, & 44]; Plaintiffs' third motion to amend/correct complaint [Docket Item 35]; and Plaintiffs' motion to seal [Docket Item 50].

Plaintiffs' federal RICO claims and RICO conspiracy claims will be dismissed with prejudice because Plaintiffs failed to demonstrate that they have standing under RICO, that a RICO

2

enterprise existed, and that there were predicate acts. This case was in federal court because of federal question jurisdiction based on the federal RICO claims. As the federal claims will be dismissed with prejudice, the Court will not exercise supplemental jurisdiction over the state law claims between non-diverse parties and will remand the state law claims to state court so that New Jersey state courts can adjudicate questions of state law. Plaintiffs' motion to seal is granted, and their motion for preliminary injunction is dismissed without prejudice to refiling same in the Superior Court of New Jersey.

## II.  BACKGROUND[1]

### A.  Plaintiffs

Plaintiffs Allstate New Jersey Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Property and Casualty Insurance

---

[1] The three pending motions to dismiss were directed at Plaintiffs' Second Amended Complaint [Docket Items 9-4, 9-5, & 9-6]. The Background section summarizes the allegations in Plaintiffs' proposed Third Amended Complaint ("TAC"), which is attached to Plaintiffs' motion to amend and which was filed after the first two motions to dismiss were filed. The TAC is 213 pages long and the Second Amended Complaint is 111 pages long. Given the length of these complaints, the Court focused on the most recent pleading. Furthermore, Plaintiffs had notice of the arguments identified in the motions to dismiss before they submitted their TAC. (The motion to dismiss that was filed after the TAC exactly copies the arguments from one of the earlier motions). If the TAC does not remedy the problems identified in the motions to dismiss, then further amendment would be futile. At oral arguments, the parties agreed that focusing upon the TAC was proper, and this Court has done so in this analysis.

Company, Allstate Insurance Company, and Encompass Insurance Company issue automobile insurance policies in New Jersey and provide Personal Injury Protection ("PIP") benefits. (Proposed Third Amended Complaint ("TAC") ¶¶ 1, 88.)

**B.  Defendants**

Defendant Summit Pharmacy offers prescription medications to individuals who have been in automobile and work accidents. (TAC ¶ 2.) From 2007 to the present, Summit Pharmacy provided prescription medications to Plaintiffs' insureds and billed Plaintiffs for those services. (TAC ¶ 5.) Summit Pharmacy's offices are in Phoenix, Arizona. (TAC ¶ 3.)

Defendant Summit Testing, Inc., provides drug screening and bloodwork analysis. (TAC ¶ 6.) From 2013 to the present, Summit Testing provided drug screening and bloodwork analysis to Plaintiffs' insureds and billed Plaintiffs for those services. (TAC ¶ 9.) Plaintiffs allege that Summit Testing does not exist as a corporation in Arizona or New Jersey and has not obtained authority from the New Jersey Secretary of State to transact business in New Jersey. (TAC ¶¶ 10-12.)

Defendant Jonathan Mortion is Summit Pharmacy's Chief Executive Officer. (TAC ¶ 13.) Defendant Joel Morton is Summit Pharmacy's Chief Medical Officer and General Supervisor. (TAC ¶ 14.) Defendant Laurie Meade is Summit Pharmacy's Chief Operating Officer and President. (TAC ¶ 15.) Defendants James Scullin,

Luke O'Brien, and Charles McWade are on Summit Pharmacy's Board of Directors. (TAC ¶¶ 16-18.) Defendant Apral Jones is Summit Pharmacy's Pharmacist-in-Charge. (TAC ¶ 19.) Defendants Sherri Oxford, Cang Nguyen, Lonny Allis, Mauricio Franco, Stephen Persons, Matt Peters, Tien Lai, and Jeff Schwartz are Summit Pharmacy pharmacists. (TAC ¶¶ 20-27.) Defendants Jessica Lee, Melisa Fuentes Flaa, William Crane, Jill M. Salajka, Kimberly Bastian, Janine Centanzo, Nataleigh Walling, Libby Fuentes, Ashley Levin, Meliza Miranda, Nick Centanzo, Eva Jee, Christopher Virginia, Jessica Starkovich, and Phanida Phivilay work or have worked for Summit Pharmacy in sales, marketing, business development, operations, or client relations. (TAC ¶¶ 28-42.) Summit Pharmacy, Summit Testing, and all Defendants who work for Summit Pharmacy or Summit Testing are referred to collectively as the "Summit Defendants".

Defendant South Jersey Health and Wellness, LLC, ("SJHW") is a New Jersey licensed healthcare professional and operates one facility in New Jersey. (TAC ¶¶ 43-44.) Defendants Daniel DePrince, III, D.O., an osteopath, and Anthony C. Carabasi, D.C., a chiropractor, co-own SJHW. (TAC ¶¶ 45-48.) SJHW employs Defendants Michael Edenzon, D.C.; Charles G. Avetian, D.O.; and Leslie Davis, P.A. (TAC ¶¶ 49-56.)

Defendant Neurology Pain Associates ("NPA"), P.C., is a licensed healthcare professional with two facilities in New

Jersey. (TAC ¶¶ 57-58.) It conducts business as Neurological Trauma Associates, which is also named as a Defendant. (TAC ¶ 59.) Defendant Russell Abrams, M.D., owns Neurological Pain Associates and employed Defendant Keith Preis, M.D. from 2007 to the present. (TAC ¶¶ 60-61.) SJHW, its owners, and its employees, together with Neurology Pain Associates and Neurological Trauma Associates and their employees are referred to collectively as the "SJHW/NPA Defendants".

Defendant Advanced Spine and Pain, LLC, ("ASAP") is a licensed New Jersey healthcare professional and has operated 16 facilities in New Jersey from 2008 to the present. (TAC ¶¶ 64-65.) Defendant L.P. Cares, LLC is a New Jersey licensed healthcare professional. (TAC ¶ 66.) Defendants Young J. Lee, M.D., and Milind D. Patharkar, M.D., co-own ASAP and LP Cares. (TAC ¶¶ 67-70.) Patharkar and Lee employ Defendants R. Todd Rinnier, D.O.; Eileen Manabat, M.D.; Adaku U. Nwachuku, D.O.; Chioma Ezeadichie, D.O.; Tracey Hessert, N.P., Kyriaki Sandy Revenidis, APN; Maraynn Masci, APN; and Ijeoma Menkiti, ANP-BC. (TAC ¶ 71.) ASAP, LP Cares, the owners, and the employees are collectively referred to as the "ASAP/LP Defendants".

In addition to the named Defendants, Plaintiffs also sued Defendants ABC Corps. 1-25, XYZ PCs 1-25, John Does 1-25, Jane Does 1-25, Dr. John Roes 1-25, and Dr. Jane Roes 1-25. (TAC ¶¶ 80-87.)

C.    Summit's Marketing Campaign

In 2007, Summit Pharmacy billed Plaintiffs approximately
$15,146.07; in 2008, it billed $7,852.85 to Plaintiffs; in 2009,
it billed $262,250.04 to Plaintiffs; in 2010, it billed
$1,687,242.02 to Plaintiffs; in 2011, it billed $1,441,161.16;
in 2012, it billed $1,435,187.32. (TAC ¶ 113.) In total,
Plaintiffs have paid Summit Pharmacy $2,296,074.84 and handled
claims from 914 individuals whom Plaintiffs insure and whom
Defendants served. (TAC ¶¶ 90-91.)

Plaintiffs allege that, since 2009, Summit Pharmacy and its
sales staff advertised to healthcare providers in order to
unlawfully steer patients to Summit Pharmacy. (TAC ¶ 114.) This
advertising campaign included sponsoring the following events:
the Philadelphia Bar Association's Bench and Bar Conference in
Atlantic City in 2009; the Philadelphia Bar Association's
Workers Compensation Section spring party at the Manayunk
Brewery in June 2010; the New Jersey Association for Justice's
("NJAJ") "Important Statewide Auto Meeting" in Voorhees, New
Jersey in 2011; the NJAJ's 2011 Boardwalk seminar, at which
Summit Pharmacy also hosted a party that several individual
Defendants attended; the 2011 NJAJ seminar titled "The Current
PIP System is Under Attack"; the 2011 Delaware Trial Lawyers
Association's Annual Convention; the 2011 Annual NJAJ golf
outing; the 2011 American Board of Trial Advocates National

7

Board of Directors meeting; the 2012 National Association of Trial Lawyers Executives' ("NATLE") winter meeting; the 2012 NATLE annual meeting; the 2012 Workers Injury Law and Advocacy Group's annual conference in Las Vegas; the 2012 New Jersey Orthopedic Society's annual fall symposium; and the NJAJ's 2013 "Four Concurrent Seminars" in Edison, New Jersey. (TAC ¶¶ 115-21, 125, 127, 130, 133, 135, 136, & 139.)

Summit Pharmacy representatives also attended the 2011 New York Workers Compensation golf tournament; the American Association for Justice ("AAJ") conference in New York in 2011; the 2011 New England Workers Compensation Conference in Rhode Island; the 2011 Workers Injury and Advocacy group conference in San Diego, California; and the 2012 AAJ convention in Arizona and the 2012 AAJ conference in Chicago. (TAC ¶¶ 122, 124, 126, 126, 128, 131, & 134.)

Summit Pharmacy held a sales meeting at P.J. Whelihan's restaurant in South Jersey in 2011; hosted holiday parties, which several Defendant medical providers attended, at the Four Seasons Hotel in Philadelphia in 2011, 2012, and 2013; and was the lone exhibitor at the New Jersey Institute for Continuing Legal Education's PIP seminar in 2013 in New Brunswick, New Jersey. (TAC ¶¶ 123, 129, 137, 138, & 140.)

In October 2012, Defendant Kimberly Bastian, a Summit sales representative, and Robert Ty Countess, an SJHW employee,[2] attended a Philadelphia Eagles football game. (TAC ¶ 136.) Since 2008, the Summit Defendants and Drs. Lee and Patharkar of ASAP/LP attended Callaway Golf outings, skeet-shooting events, NJAJ conventions in Atlantic City, and a Madonna concert in Las Vegas. (TAC ¶ 141.)

### D. Defendants' Alleged Steering of Patients

Plaintiffs allege that Defendants had an unlawful steering scheme to deny Plaintiffs' insureds the right to fill their prescriptions at a pharmacy of their choice and directed Plaintiffs' insureds from their respective pharmacies to Defendant Summit Pharmacy. (TAC ¶ 112.)

Plaintiffs provided examples of this alleged steering behavior. For example, Defendant Dr. Preis told patient D.C.[3] to fill her prescriptions at Summit Pharmacy, instead of her regular pharmacy. (TAC ¶ 144.) Dr. Preis "made it seem like . . . you don't have to worry about anything" because Summit Pharmacy would overnight mail the prescriptions, insurance would pay, D.C. would not have any co-pays, and "[i]t would be no cost to me." (TAC ¶ 144.) Dr. Preis told patient B.R. that she would need to fill her prescription through Summit Pharmacy and, when

---

[2] Countess was originally named as a Defendant in this action, but Plaintiffs dismissed him. [Docket Item 66.]
[3] The TAC refers to patients by their initials only.

she asked why her regular pharmacy would not suffice, he responded that the medications "were specially prescribed, the medication was somehow couldn't get it at Wal-Mart or CVS . . . ." (TAC ¶ 145.) Dr. Preis told patient J.T. that he would send her prescription to Summit, not her regular pharmacy, because "I didn't have health insurance so he didn't give me a prescription." (TAC ¶ 146.)

Defendant Deprince at SJHW directed patient J.P. to use Summit Pharmacy, and J.P. said "I don't think they gave me an option. I think they just told us." (TAC ¶ 53.) SJHW personnel told patient D.G. that "because it was a car accident and Allstate should be paying for it, I should go through them (Summit) and have them deliver it because they (Allstate) should be paying for it." (TAC ¶ 151.)

Plaintiffs conducted an internal review of Defendant ASAP's claims and determined that 56% of ASAP's patients were referred to Summit Pharmacy from 2010 to 2011. (TAC ¶ 153.) Defendant Dr. Eileen Manabat of ASAP told patient M.R. to fill her prescription cream medication at Summit Pharmacy because Wal-Mart could not provide the medication. (TAC ¶ 155.) Defendant Dr. R. Todd Rinnier of ASAP treated patient F.S. who filled his prescriptions at CVS except for "the cream that came through the mail," which Dr. Rinnier ordered. (TAC ¶ 157.) Defendant Dr. Lee of ASAP treats patient H.S. and orders H.S.'s medications

10

through Summit Pharmacy. (TAC ¶ 159.) Patient K.J.J., who sees Drs. Patharkar and Nwachuku at ASAP, learned that she would not have co-pays for medications filled through Summit Pharmacy and learned about Summit Pharmacy from a pamphlet in the doctor's office. (TAC ¶ 161.)

Plaintiffs paid Summit Pharmacy for these prescription services in reliance on Summit Pharmacy's "misrepresentations in its claims for reimbursement that it had provided the prescription services in accordance with the applicable state statutes and regulations . . . ." (TAC ¶ 166.)

**E. Other Unlawful Acts**

Plaintiffs also pleaded other unlawful acts.

They allege that Summit Pharmacy provided prescription services in violation of New Jersey and Arizona registration, licensing, and medical record requirements. (TAC ¶ 167.) From 2007 through September 28, 2009, Summit Pharmacy allegedly shipped prescriptions to Plaintiffs' insureds in New Jersey even though it was not properly registered as an out-of-state pharmacy with the New Jersey Board of Pharmacy. (TAC ¶ 168.) Plaintiffs allege that Summit Pharmacy filled prescriptions without requiring legally necessary co-payments and submitted claim forms that misled Plaintiffs into believing that copayments had been made. (TAC ¶¶ 143, 339.) Defendant Sherri Oxford filled prescriptions for Plaintiffs' insureds while her

11

license was suspended for six months. (TAC ¶ 169.) Summit Pharmacy also allegedly filled prescriptions without having prescription orders from a medical practitioner. (TAC ¶ 170.) When it submitted bills to Plaintiffs, Summit Pharmacy falsely represented and/or implied that it provided prescription services in accordance with requisite laws and regulations. (TAC ¶¶ 183(E), 374.)

Plaintiffs also allege that the ASAP/LP Defendants generated illegal self-referrals by referring patients from ASAP to LP Cares for anesthesia services. (TAC ¶ 410.) As a result, Plaintiffs allege that, from the same procedures, ASAP submitted claims for pain management services and LP Cares submitted claims for anesthesia. (TAC ¶¶ 411-427.)

In addition, ASAP personnel continued to write prescriptions for patient K.J.J. even after she tested positive for cocaine, which should have disqualified her from ASAP's care. (TAC ¶¶ 162-63.)

**F. Plaintiffs' Allegations of New Evidence Outside the TAC**

After briefing on the motions was complete, Plaintiffs filed a letter titled "Submission of New Discovered Evidence to the Court." [Docket Item 56.] In this letter, Plaintiffs allege that Summit Testing stopped submitting claims in September 2013 and Defendants Joel Morton, Jonathan Morton, and James Scullin of Summit Pharmacy created a new corporation named Phoenix

Toxicology & Lab Services, LLC ("Phoenix"), which began submitting claims in January 2014. [Id. at 3.] Plaintiffs allege that Phoenix had submitted the same claims for reimbursement that had previously been paid to Summit Testing and that Phoenix was not legally a corporation and had no certificate of authority from the New Jersey Secretary of State when it performed these services. [Id. at 2-4.]

Plaintiffs also allege that Defendant Kimberly Bastian, a sales representative for Defendant Summit Pharmacy, visited SJHW's offices in 2013. [Id. at 5.]

Plaintiffs' investigation also revealed that Summit Pharmacy has two new directors: Jack Anderson and James Vandervelden, who is Managing Partner and Founder of Pleasant Bay Capital Partners. One of Pleasant Bay's investments is Summit Pharmacy. [Id. at 6.]

The Summit Defendants responded [Docket Item 57] and disputed the allegations in Plaintiffs' letter.[4]

**G. Claims for Relief**

The TAC asserts 25 counts over 148 pages that, when condensed, reveal the following:

Plaintiffs assert federal and state RICO claims and RICO conspiracy claims against all Defendants. Plaintiffs assert that

---

[4] They also argued that Plaintiffs' letter was an unauthorized sur-reply and should be stricken.

Defendants were associated-in-fact and engaged in an enterprise to obtain money from Plaintiffs. The predicate acts were mail fraud and also, with the state RICO claims, health care claims fraud. Plaintiffs also assert claims under the NJIFPA and, against the ASAP/LP Defendants only, under the Codey Act.

Plaintiffs assert that Defendants are not entitled to any of the monies that Plaintiffs have paid them. Plaintiffs seek compensatory and treble damages, interest, costs of suit, attorneys' fees, disgorgement, a constructive trust and equitable lien on Defendants' assets until disgorgement is complete, declaratory judgment that Plaintiffs need not pay any benefits to Defendants, revocation or suspension of the corporate Defendants' charters and the individual Defendants' licenses, and injunctive relief.

**H. Procedural History**

Plaintiffs filed this action on August 8, 2013 in New Jersey Superior Court against 31 of the named Defendants. [Docket Item 1-1.] Plaintiffs filed an amended complaint in Superior Court on August 22, 2013 and added six Defendants. [Docket Item 1-2.] Some of the Defendants filed a notice of removal to federal court. [Docket Item 1.] Plaintiffs filed a motion to remand. [Docket Item 3.] Defendants filed a second notice of removal [Docket Item 9] because Plaintiffs had filed a second amended complaint in Superior Court on October 3, 2013

14

naming additional Defendants [Docket Items 9-4, 9-5, & 9-6]. The Court issued an Opinion and Order [Docket Items 14 & 15] denying Plaintiffs' motion to remand because, <u>inter alia</u>, the Court had original jurisdiction under 28 U.S.C. § 1331 over the federal RICO claims.

Plaintiffs filed a motion for preliminary injunction to stay pending PIP arbitrations. [Docket Item 17.] The ASAP Defendants[5] [Docket Item 21] and the Summit Defendants [Docket Item 22] filed motions to dismiss. Plaintiffs opposed both motions, but their opposition to the ASAP Defendants' motion included a cross-motion for leave to file the TAC [Docket Items 35 & 36]. The SJHW/NPA Defendants also filed a motion to dismiss. [Docket Item 44.] Plaintiffs filed a motion to seal. [Docket Item 50.]

The Court heard oral argument on April 22, 2014.[6]

---

[5] LP Cares was not part of the ASAP Defendants' motion to dismiss because it was named for the first time in the TAC.

[6] At oral argument, the parties agreed to consider whether this case would be appropriate for mediation. Plaintiffs filed a letter on April 28, 2014 [Docket Item 63] notifying the Court that they want to proceed without mediation. Defendants expressed interest in mediation [Docket Items 62, 64, & 65], although the Summit Defendants placed several conditions upon their willingness to mediate. Local Civil Rule 301.1(d) permits the Court to refer any civil action to mediation without the parties' consent, but the Court declines to do so in this case because, as explained <u>infra</u>, Plaintiffs' federal claims will be dismissed with prejudice and the remaining state law claims should be adjudicated by a state court.

### III. MOTIONS TO DISMISS AND MOTION TO AMEND

#### A. Parties' Arguments

##### 1. Motions to Dismiss

The SJHW/NPA Defendants and the ASAP Defendants argue that Plaintiffs did not meet the specificity requirements of Rule 9(b); did not plead statutory insurance fraud; failed to allege knowing and intentional wrongdoing; did not plead facts showing an agreement between the Defendants; did not plead facts showing that the SJHW/NPA Defendants intentionally used the US mails to defraud; cannot seek disgorgement of funds that the SJHW/NPA Defendants did not receive; and failed to join the insureds as interested parties.

The Summit Defendants argue that Plaintiffs did not satisfy Fed. R. Civ. P. 9(b); failed to demonstrate a pattern of racketeering activity; failed to plead any predicate acts with particularity; did not plead facts indicating the existence of a steering agreement; failed to plead the existence of an enterprise engaged in racketeering activity; did not satisfy the causation element of Article III standing or the causation and injury requirements for RICO standing; did not show that Summit Pharmacy's claims were fraudulent or that the Summit Defendants were required to collect co-pays before submitting claims; did not show that the Summit Defendants had the scienter to commit

fraud; and did not plead sufficient facts to allege claims against individual Defendants.[7]

In their opposition briefs to the motions to dismiss, Plaintiffs argue that the NJIFPA does not require intent to deceive, scienter, or intentional wrongdoing; that they pleaded sufficient facts to show a steering agreement; that the Court can reasonably infer that the Defendant medical providers steered patients to Summit Pharmacy because they were solicited to do so; that the New Jersey RICO statute is broader in scope than the federal statute; and that the Plaintiffs were not required to join the insureds as defendants because the fraudulent conduct pertains to the Defendants only, not the insureds. Plaintiffs also request leave to amend a fourth time if the Court finds the motions to dismiss meritorious.

### 2. Plaintiffs' Motion to Amend

Plaintiffs argue that leave to file the TAC should be granted because Defendants will not be prejudiced, amendment would not be futile, and there was no undue delay or bad faith.

---

[7] Summit Pharmacy also made factual statements: It described the PIP insurance billing process, noted that co-pay amounts vary depending on the PIP policy, emphasized that its claim forms do not include co-pay amounts, asserted that there were no misrepresentations about co-pays because they do not appear on the claim form, and alleged that Summit Pharmacy only learns a patient's copay amount when it receives the insurance company's explanation of benefits after filling the prescription. Summit Pharmacy also noted that it is a compounding pharmacy and can fill prescriptions that regular retail pharmacies cannot fill.

Plaintiffs added LP Cares and the Codey Act claims to the TAC because they discovered the relationship between ASAP and LP Cares during their investigations.

In their opposition to Plaintiffs' motion to amend, the Summit Defendants argued that adding LP Cares constitutes misjoinder under Fed. R. Civ. P. 20(a)(2) because the allegations against LP Cares are not connected to the RICO claims.

The ASAP Defendants argue, in opposition to Plaintiffs' motion to amend, that the referrals between ASAP and LP Cares fall within exceptions to the Codey Act's self-referral prohibition; liability under the NJIFPA requires intentional wrongdoing; Plaintiffs' failure to plead the particulars of the alleged steering agreement violates Fed. R. Civ. P. 9(b); Plaintiffs have not pled that the ASAP Defendants were aware of Summit Pharmacy's failure to follow regulations; and Plaintiffs failed to plead an enterprise, mail fraud, a pattern of racketeering activity, or an agreement to participate in the enterprise's conduct.

## B. Standards of Review

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Although a court must

accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted).

In this case, because Plaintiffs have alleged fraud, heightened pleading standards apply. Federal Rule of Civil Procedure 9(b) mandates that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This rule requires "at a minimum" that plaintiffs support their fraud allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story-that is, the who, what, when, where and how of the events at issue." In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted). Plaintiffs can also "use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

Under Fed. R. Civ. P. 15(a)(2), a party may amend its pleading with the court's leave, and "[t]he court should freely give leave when justice so requires." However, the court may deny leave to amend on grounds "such as undue delay, bad faith, dilatory motive, prejudice and futility." Calif. Pub. Employees'

19

Ret. Sys. V. Chubb Corp., 394 F.3d 126, 165 (3d Cir. 2004). An
amendment is futile where "the complaint, as amended, would fail
to state a claim upon which relief could be granted" under Fed.
R. Civ. P. 12(b)(6). In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410, 1434 (3d Cir. 1997).

A "district court ruling on a motion to dismiss may not
consider matters extraneous to the pleadings" except that a
"document *integral to or explicitly relied* upon in the complaint
may be considered . . . ." Id. at 1426 (citations omitted)
(emphasis in original). This rule also applies to motions to
amend. See Downey v. Coal. Against Rape & Abuse, Inc., 143 F.
Supp. 2d 423, 449 n.5 (D.N.J. 2001) (applying Rule 12(b)(6)
standard regarding consideration of documents and facts outside
of the pleadings in addressing motion to amend under Fed. R.
Civ. P. 15(a)); cf. Hassoun v. Cimmino, 126 F. Supp. 2d 353, 369
n.24 (D.N.J. 2000) ("Defendants have pointed to no authority
directing this Court to look beyond the pleadings in considering
. . . opposition to a motion to amend").

**C. RICO Claim Analysis**

To plead a RICO violation under 18 U.S.C. § 1962(c),
Plaintiffs must have standing under RICO. They must also allege:
1) the conduct 2) of an enterprise 3) through a pattern 4) of
racketeering activity. 18 U.S.C. § 1962(c). The RICO statute
also prohibits conspiring to engage in such conduct. 18 U.S.C. §

1962(d). "[A] defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001).

For reasons next explained, Plaintiffs' federal RICO claims will be dismissed because Plaintiffs have not pleaded RICO standing, an enterprise, and a predicate act of racketeering activity.

### 1. Standing

Plaintiffs' RICO claims fail because Plaintiffs lack RICO standing.

To sustain a RICO claim, Plaintiffs must show that Defendants' actions were the proximate cause of their injuries. RICO has a "standing requirement of injury to plaintiff's business or property by reason of the RICO violation." In re Sunrise Sec. Litig., 916 F.2d 874, 883 (3d Cir. 1990). In other words, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). There must be "some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992). The direct injury requirement is integral to RICO standing analysis: "When a court evaluates a

RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 461 (2006).

Plaintiffs argue that Defendants unlawfully steered insureds from the insureds' usual pharmacies of choice to Summit pharmacy. Plaintiffs lack RICO standing because, even if Defendants did unlawfully preclude Plaintiffs' insureds from choosing their pharmacies, Plaintiffs have not alleged that this steering harmed Plaintiffs directly. For example, Plaintiffs have not alleged that the steering caused Plaintiffs to pay more than they otherwise would have paid to the insureds' regular pharmacies. <u>See, e.g.</u>, <u>Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck & Co., Inc.</u>, 12-1379 (MAS), 2013 WL 1819263, at *7 (D.N.J. Apr. 29, 2013) (holding that plaintiff health insurance providers failed to establish standing and dismissing RICO claims against drug manufacturers, who subsidized cost of brand-name drugs, because "there is no allegation that . . . Plaintiffs were compelled to pay for that prescription in lieu of a cheaper alternative medication"). Plaintiffs also have not pleaded that Defendants prescribed medications that were medically unnecessary, that Summit Pharmacy billed Plaintiffs for medications that it did not actually provide, that Summit Pharmacy overcharged for

medications, or that Defendants submitted bills for fake patients.

Absent tangible financial loss from the predicate acts, Plaintiffs lack RICO standing. Under RICO, "a showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000) (citation omitted). Plaintiffs' argument that their insureds could not choose their preferred pharmacies does not establish concrete financial loss to Plaintiffs.

At oral argument, Plaintiffs argued that Defendants failed to comply with New Jersey healthcare laws and regulations and, therefore, based on New Jersey case law requiring compliance with New Jersey healthcare laws and regulations, Plaintiffs should not have had to pay the Summit Defendants anything. Plaintiffs' argument is not that Defendants' conduct caused Plaintiffs tangible financial losses; Plaintiffs' argument is that Defendants' conduct precludes Defendants from receiving insurance payments under state law. This argument does not establish federal RICO standing because it is not connected to the federal RICO predicate act. RICO standing stems from the RICO predicate act: "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."

23

Sedima, 473 U.S. at 496. In other words, "[a]ny recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." Id. at 497; see also Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc., 87 F. App'x 227, 233 (3d Cir. 2003) ("[t]o have standing, a RICO plaintiff must also show that the alleged RICO violations proximately caused injury to the plaintiff's business property").

Plaintiffs allege that Defendants violated New Jersey laws and regulations, but the laws that they cite are not predicate acts for federal RICO claims. For example, Plaintiffs allege that Defendants violated, inter alia, N.J.S.A. 39:6A-4, which states that, under PIP coverage, "[m]edical expense benefit payments shall be subject to any deductible and any copayment which may be established as provided in the policy"; N.J.S.A. 45:14-65e, which states that it is grossly unprofessional for a pharmacy to distribute "premiums or rebates of any kind whatsoever in connection with the sale of drugs and medications"; N.J. Admin. Code 13:39-3.10, which states that "[i]t shall be unlawful for a pharmacist to enter into an arrangement with a health care practitioner who is licensed to issue prescriptions for the purpose of directing or diverting patients to or from a specified pharmacy or restraining in any way a patient's freedom of choice to select a pharmacy"; and

Allstate Ins. Co. v. Orthopedic Evaluations, Inc., 300 N.J. Super. 510, 516 (App. Div. 1997), which states that, under the PIP coverage laws, "in order to be eligible for recognition, [healthcare services] must also comply with any other significant qualifying requirements of law that bear upon rendition of the service." None of the state laws and regulations that Plaintiffs cite appear in the federal RICO statute as predicate acts. The federal statute defines racketeering activity as, inter alia, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year" and various other offenses indictable under federal criminal laws. 18 U.S.C. § 1961(1). Even if Defendants are not entitled to payment because of their failure to comply with New Jersey laws and regulations, Plaintiffs have not shown financial losses specifically caused by a predicate act under federal RICO. That is the relevant inquiry for federal RICO standing, and Plaintiffs' have not satisfied their burden.

Plaintiffs have not alleged concrete financial losses attributable to federal RICO predicate acts and, as a result, their federal RICO claims will be dismissed with prejudice for lack of standing.

**2. Enterprise**

Even if Plaintiffs had standing, their federal RICO and RICO conspiracy claims would still fail because they have not alleged the existence of a RICO enterprise.

Plaintiffs allege that Defendants operated as an association-in-fact enterprise. (TAC ¶ 178.) "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). While an association-in-fact enterprise "need not have a hierarchical structure or a 'chain of command,'" there must be some decision-making: "decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc." Id. at 948. "[T]he group must function as a continuing unit . . . ." Id.

Plaintiffs' allegations regarding the existence of an enterprise are insufficient because Plaintiffs failed to allege the relationship element of the enterprise definition. Plaintiffs allege that Defendant Summit Pharmacy sponsored or hosted events, such as holiday parties, which Defendant medical providers attended. In addition, Summit Pharmacy employees attended a Madonna concert, golf tournaments, and skeet-shooting

events with some of the individual Defendants. Plaintiffs have not alleged that the alleged enterprise had any decision-making abilities or even met once to make a concerted decision. Attendance at a holiday party or a Madonna concert does not show a RICO enterprise. Furthermore, Plaintiffs have not alleged any planning, cooperation, or coordination, except the coordination necessary for Summit Pharmacy to invite individual Defendants to holiday parties or for some Defendants to attend a concert or golf tournaments together. These allegations do not show relationships that form the basis of a RICO enterprise.

In In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 380 (3d Cir. 2010), the Third Circuit upheld the dismissal of certain RICO claims brought by Plaintiffs who had purchased insurance from brokers who allegedly had steered clients to minimize competition and inflate prices. The Third Circuit found insufficient the plaintiffs' allegations

> that each insurer entered into a similar contingent-commission agreement . . .; that each insurer knew the identity of the broker's other insurer-partners and the details of their contingent-commission agreements; that each insurer entered into an agreement with the broker not to disclose the details of its contingent-commission agreements; that the brokers utilized certain devices, such as affording "first" and "last looks," to steer business to the designated insurer; and that . . . insurers adopted similar reporting strategies . . . . [T]hese allegations do not plausibly imply concerted action . . . .

Id. at 374. The Brokerage Antitrust court emphasized that the Plaintiffs' allegations "fail the basic requirement that the components function as a unit" and "do not plausibly imply anything more than parallel conduct by the insurers." Id. The same reasoning applies to Plaintiffs' allegations in this case. The fact that many of the Defendants' patients used Summit Pharmacy and attended Summit Pharmacy's holiday parties does not show that Defendants functioned as a unit. Plaintiffs have not plausibly alleged the existence of an enterprise.

Plaintiffs suggest that the Court can infer the existence of a steering enterprise because of the quantity of prescriptions filled at Summit Pharmacy and because of the extent of Summit Pharmacy's marketing and holiday parties. But "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiffs have not sustained that burden; they have alleged nothing more than parallel conduct and an aggressive advertising campaign from Summit Pharmacy. Plaintiffs' RICO claims will be dismissed with prejudice for failure to plead the relationship element of a RICO enterprise.[8]

Because, as explained supra, the existence of an enterprise is essential for pleading a RICO conspiracy claim, Plaintiffs'

---

[8] Because Plaintiffs have not satisfied the relationship element, the Court need not examine the purpose and longevity elements.

RICO conspiracy claims will also be dismissed with prejudice for failure to plead a plausible enterprise. Cf. In re Managed Care Litig., 00-1334-MD, 2009 WL 812257, at *6 (S.D. Fla. Mar. 26, 2009) (granting motion to dismiss RICO conspiracy claims because "[p]laintiffs also attempt to infer the existence of conspiracy by reference to various meetings and conferences attended by Defendants. Once again, just like parallel conduct, mere opportunity to conspire alone without direct evidence of agreement is insufficient to infer the existence of a conspiracy").

Plaintiffs have not alleged the existence of a RICO enterprise under federal RICO law. As a result, Plaintiffs' federal RICO and RICO conspiracy claims will be dismissed with prejudice.

### 3. Predicate Offenses

In addition to the standing and enterprise flaws, Plaintiffs' federal RICO claims have a third deficiency because Plaintiffs have not pleaded a plausible predicate offense.

Plaintiffs allege that the predicate act was federal mail fraud, 18 U.S.C. § 1341, which is a predicate offense under federal RICO, 18 U.S.C. § 1961(1).

To allege mail fraud, Plaintiffs must describe: 1) the existence of a scheme to defraud, 2) the use of the mails in furtherance of the fraudulent scheme, and 3) culpable

29

participation by the defendants. United States v. Hannigan, 27 F.3d 890, 892 (3d Cir. 1994).

Plaintiffs failed to allege a scheme to defraud. The gravamen of the TAC is an alleged steering agreement, but Plaintiffs have not alleged any facts supporting the existence of an agreement to defraud Plaintiffs. They have not alleged that Defendants submitted false statements or statements that were intended to deceive by, for example, charging inflated prices, prescribing medically unnecessary medications, or submitting claims for medications that were not actually provided. The facts in this case contrast with facts in cases in which courts have held that plaintiffs successfully pleaded a scheme to defraud. Cf., e.g., Allstate Ins. Co. v. Rozenberg, 590 F. Supp. 2d 384, 388 (E.D.N.Y. 2008) (plaintiff insurer adequately alleged scheme to defraud because it "contend[ed] that [defendant] subjected their claimants to a battery of unnecessary tests and that the results of these examinations were often deliberately misrepresented or fabricated in order to justify further costly but unneeded treatments. . . . based upon these fabricated testing results, the Defendants submitted invoices to the Plaintiffs demanding payments for services that were not medically necessary or, in some cases, never rendered at all"); Feiler v. New Jersey Dental Ass'n, 191 N.J. Super. 426, 436 (Ch. Div. 1983) (billing statements to insurance

companies were misrepresentations because when "Feiler does a procedure for which he tells the insurance carrier he charges $100, then collects $80 from the carrier and, by prearrangement, forgives the patient's copayment, he has lied to the carrier. His charge is really $80 . . . and the carrier should pay only $64"). In such cases, there was a deliberate scheme to misrepresent, which is absent here.

Plaintiffs emphasize that the unlawful steering was the predicate act, but unlawful steering does not establish mail fraud. Plaintiffs have not cited any cases holding that steering, absent deception, rigged bids, or affirmative misrepresentation, constitutes a RICO predicate act. Plaintiffs also argue that the misrepresentation was the implied representation, required under New Jersey law, that their bills and services complied with all New Jersey regulations. As discussed above, however, violations of the New Jersey laws that Plaintiffs cite do not establish federal RICO predicate acts.

Plaintiffs have also emphasized that Summit Pharmacy allegedly did not charge co-pays, but that alleged conduct does not show mail fraud. Plaintiffs have not identified any specific statements in which Defendants falsely stated that co-pays were collected; nor have Plaintiffs alleged, as in the Feiler case, supra, that Defendants falsely inflated their charges to the Plaintiffs based on their alleged failure to collect co-pays.

31

The Southern District of New York dismissed mail-fraud-based RICO claims against manufacturers of name-brand drugs who were subsidizing co-pays because "Plaintiffs d[id] not . . . allege that they have been provided with any records from either Defendants or pharmacies falsely stating that an insured paid the co-pay unaided by a co-pay subsidy coupon." Am. Fed'n of State, Cnty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co., 948 F. Supp. 2d 338, 347 (S.D.N.Y. 2013). The Bristol-Myers court noted that courts have sustained breach-of-contract claims based on failure to collect co-pays because "health insurers may create contracts that relieve them of the duty to pay physicians and dentists who routinely waive co-pays." Id. at 350. A breach-of-contract claim is not a predicate act under federal RICO. While acknowledging "policy arguments in favor of a preference for rules that secure co-pay schemes against efforts to side-step them," the Bristol-Myers court noted the absence of "any sort of general rule that routine and hidden waiver of co-pays, even in the absence of a contractual obligation to enforce the co-pay requirement, states a claim for fraud." Id. at 351. Plaintiffs failed to plead the predicate act of mail fraud.

Dismissal of Plaintiffs' federal RICO claims will be with prejudice because further amendment would be futile. Plaintiffs' federal RICO claims have three fundamental flaws, i.e.,

32

standing, enterprise, and predicate act, each of which is individually sufficient to dismiss the claims. The lack of enterprise also necessitates dismissal of Plaintiffs' RICO conspiracy claims.

Plaintiffs requested leave to file another amended complaint if the Court were inclined to grant Defendants' motions to dismiss. This request is denied. The TAC is 213 pages long and was filed after Plaintiffs had notice of the arguments in the motions to dismiss. Plaintiffs have submitted four different complaints and still failed to plausibly plead federal RICO claims. Filing another prolix complaint would be futile. See Mann v. Brenner, 375 F. App'x 232, 240 n.9 (3d Cir. 2010) (district court properly granted motion to dismiss and denied motion to amend because two amended complaints had been filed and "the District Court was well within its discretion in finding that allowing [the plaintiff] a fourth bite at the apple would be futile"). The Court's denial of Plaintiffs' motion to amend is without prejudice to Plaintiffs' right to seek leave to amend their state law claims in state court.

**D. Remaining State Law Claims and Supplemental Jurisdiction**

The only remaining claims are state law claims under the New Jersey RICO statute, the NJIFPA and, against the ASAP/LP Defendants only, the Codey Act. "The district courts may decline to exercise supplemental jurisdiction . . . if . . . the

district court has dismissed all claims over which it has
original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "The
decision to retain or decline jurisdiction over state-law claims
is discretionary" and "should be based on considerations of
judicial economy, convenience and fairness to the litigants."
Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (citations
omitted).

     In this case, the Court declines to exercise supplemental
jurisdiction. The motion to dismiss stage is an "early stage in
the litigation," and, therefore, "dismissal of the pendent state
claims in a federal forum will result in neither a waste of
judicial resources nor prejudice to the parties." Freund v.
Florio, 795 F. Supp. 702, 711 (D.N.J. 1992); see also Charles
Alan Wright & Arthur R. Miller, Federal Practice and Procedure,
§ 3567.3 (3d ed.) ("[a]s a general matter, a court will decline
supplemental jurisdiction if the underlying claims are dismissed
before trial").

     In addition, the parties dispute state law questions such
as whether the NJIFPA requires intentional wrongdoing; whether
New Jersey law requires pharmacies to collect a co-pay prior to
filling a prescription for a patient who has PIP insurance; and
whether the NJIFPA precludes waiver of co-pays. New Jersey state
courts should make these determinations of state law. See Gov't
Employees Ins. Co. v. MLS Med. Grp. LLC, Civ. 12-7281 (SRC),

34

2013 WL 6384652, at *11 n.4 (D.N.J. Dec. 6, 2013) (noting, in case involving NJIFPA claims based on PIP benefits, that "a dismissal of the RICO claim would leave no federal question on the face of the operative complaint and would thus militate in favor of dismissing the remaining state claims without prejudice, so that they may proceed in state court").

The Court will remand Plaintiffs' state law claims to the Superior Court. See Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[w]hile § 1367(c) does not specify what disposition the district court is to make of state claims it decides not to hear, . . . we believe that in a case that has been removed from a state court, a remand to that court is a viable alternative to a dismissal without prejudice").

## IV.   MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs seek a preliminary injunction staying all of Defendant Summit Pharmacy's PIP arbitrations, arbitration awards, and appeals of arbitration awards until Plaintiffs' NJIFPA claims have been litigated. Plaintiffs argue that, in PIP arbitration, they are precluded from asserting fraud issues and cannot recover damages, attorneys' fees, or investigation costs. Plaintiffs also assert that discovery for PIP arbitrations is limited and would prevent them from establishing patterns of fraudulent conduct. The ASAP and Summit Defendants opposed Plaintiffs' motion.

Because the Court will remand state law claims and because the injunction motion is based upon NJIFPA claims, the Court will dismiss Plaintiffs' motion for preliminary injunctive relief without prejudice. In their briefing regarding this preliminary injunction motion, the parties debated the interplay between the NJIFPA and the PIP arbitration system. These issues, arising between non-diverse parties at an early stage of litigation, are best decided in state court.

Furthermore, Plaintiffs have not shown that irreparable harm would result if the injunction does not issue or if there is a delay in issuing the injunction. In order to obtain a preliminary injunction, Plaintiffs must show, <u>inter alia</u>, "that they are likely to experience irreparable harm without an injunction." <u>Adams v. Freedom Forge Corp.</u>, 204 F.3d 475, 484 (3d Cir. 2000). "The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. <u>Id.</u> at 484-85.

In their briefing, Plaintiffs asserted that, absent a stay, they would endure extensive costs that they cannot recover. Plaintiffs did not explain what these costs would be or why they cannot be recovered if they prevail in this litigation. At oral argument, Plaintiffs argued that, if the case were remanded to state court, delay would ensue, but they did not explain how

they would be irreparably harmed by any delay that may result between now and when the state court could issue an injunction. If Plaintiffs demonstrated that a remand would cause irreparable harm due to delay, the Court would have taken that into account in the consideration of fairness to the litigants under § 1367(c)(3), <u>supra</u>, but such is not the case here. Plaintiffs' motion for preliminary injunction will be dismissed without prejudice to their right to seek an injunction in state court.

**V.  MOTION TO SEAL**

Plaintiffs filed a motion to seal certain documents with personal patient identification information, which had been inadvertently filed without redaction. The Summit Defendants filed opposition. [Docket Item 54.] They do not oppose sealing the documents, but they argue that Plaintiffs should be required to implement privacy breach procedures under the Health Insurance Portability and Accountability Act ("HIPAA") and indemnify the Summit Defendants for consequences from the disclosures.

Sealing personal patient information is clearly in the public interest. Plaintiffs' motion is granted.

The Court will not address the Summit Defendants' issues regarding HIPAA and indemnification because those issues are beyond the scope of this motion to seal.

## VI.  CONCLUSION

Defendants' motions to dismiss will be granted in part. Plaintiffs' federal RICO and RICO conspiracy claims will be dismissed with prejudice. The state law claims will be remanded to state court as the Court declines to exercise supplemental jurisdiction when there are no federal claims remaining. Plaintiffs' motion to amend will be denied without prejudice to Plaintiffs' right to seek leave to file an amended complaint in state court. Plaintiffs' motion to seal will be granted. Plaintiffs' motion for preliminary injunction is dismissed without prejudice to Plaintiffs' right to refile such motion in state court.

An accompanying Order will be entered.


**May 1, 2014**                              **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             Chief U.S. District Judge

38